Please be seated. Thank you. We'll have a third call to the next case. 2HC 0805 W.C. Belcher-Santino v. Senator Henry. Counsel, you may proceed. Thank you. Good morning, Justices. May it please the Court, my name is Michael Lulay. I represent the petitioner. This matter comes before you on our request that you review the Commission's decision in the Workers' Compensation matter for error. I'll briefly describe the facts and along the way point out what we assert to be the errors, and hopefully by the time I'm done I'll earn your agreement as to one or more of them. On October 7, 2010, Mr. Santino was working where he had to create forms for large concrete blocks, and those forms would be lubricated so that the concrete could be easily removed. He was standing in the form. He slipped. He fell. He suffered a bimalleolar fracture to his left ankle. He landed on his lower spine directly. I don't think you need to spend time on the facts. I mean, I don't think the initial accident is an issue, is it? Fair enough, Your Honor. We then came to have a gentleman who had lost time from work in the amount of $17,000 of TTD that had been unpaid, approximately $99,000 in unpaid medical bills, and it was determined by his physicians that he had suffered an exacerbation, a degenerative condition in his lumbar spine that required a lumbar fusion. The way we know all of this is because this matter went to trial on September 7, 2012, and those matters were legally adjudicated to be the case, with the full benefit of Respondent being represented by an attorney and having him hand an independent medical exam. Could we hone in on what the issues are in this case? The claimant, did he not file the petition for an immediate hearing pursuant to Section 19b? He did. Correct?  That's what started this second phase of the litigation. Preliminary to that, the position was taken by the defendant that there was no need to honor the original 19b award by virtue of the fact that they would like to have the petitioner reinvestigated by an independent medical examiner as though they felt it would be the right thing to do. Let's talk about what the case turned on, okay? I think you'd have to concede the facts here are very unusual. The commission affirmed, and they found, that the claimant lacked credibility, citing evidence that the claimant had been using two separate identities, was employed by another employer countrywide during a period of time, he was alleging he was medically unable to work, and filed a second claim for workers' compensation benefits against countrywide, alleging an injury to his back in August 2014, but he claimed he didn't have any other job. So why would the commission give any credibility to his testimony on anything? It's my position that that only affords credibility on limited issues. And if we could go back in time to your point, which was that we filed a second 19b. However, amidst the petitioner's testimony, it became apparent to me, as you pointed out, that perhaps I had not been treated forthrightly by my own client. And during the cross-examination, it became apparent to me that while I was about to take a position that my client had been without work for a period of time, and had been without a new work injury during that time, that perhaps that was not the facts. And so I declined to redirect my client. The cross-examination was concluded. I consulted with my client. It was my decision at that time that I may not be able to continue with him ethically, and I asked the court for a period of time to make that decision. When we returned, the manner in which it was decided to handle this was that we withdrew, and we believe rightfully. We withdrew all requests for relief from the court. Consequently, it is our position, our initial position there, that no matter what facts came to be in this case, there was no authority of the commission to render any decision based upon them or to seek and garner them. By the time I had showed up for the second hearing date, I had given due and proper notice to the arbitrator of my withdrawal by a formal petition, by a courtesy email, and as well to counsel. I showed up on that date with the intention that we would just do the matter of housekeeping, which was, and instead I was confronted with the arbitrator's position that that would be prejudicial to the Respondent for me to have withdrawn this, and, therefore, my ---- I would be denied this. It's a ---- Well, what authority can you point us to that would support the argument you have an absolute right to withdraw after a hearing has commenced and after testimony has been taken as opposed to before? So what's your authority for that? Well, I did cite cases, workers' compensation cases, one in particular named, I can't recall, where it was explained that despite the beginning of a process requesting review of a matter, that the appellate court held that it was within the rights of a petitioner without permission by the Respondent to withdraw such a request for relief. So by analogy, a request for relief can be withdrawn. I also may ---- It can be withdrawn. Where is the authority, though? In this case, a hearing had commenced, correct? I don't see that as a distinction. Evidence had been presented, correct? I don't see that as a distinction, but, yes, you're 100 percent correct. In other words, there was no problem. So if you complete an entire hearing, every evidence is closed, and then you'd have the right to withdraw your petition. Is that your position? That is my position. Okay. And that is not contrary to civil law, which only qualifies one's ability or absolute right, as it's called, to dismiss their case in their entirety on the fact that the court is empowered to create an order just ---- So could you then ---- would it also be your opinion that that relief was granted? Could you come back later and then refile your petition and start over? It is my position that these things are not crucial to my position, but the answer to that question would be, absolutely, I do believe that I can't. Well, maybe that's one of the reasons the Commission didn't think you should be able to do that through the prejudice, because the hearing had started, cross-examination had commenced, and then you're saying it doesn't matter, I can get out of this any time. I can, and what I explained to the court in connection were that to be the arbitrator's concern was that everything is already there, there is no prejudice. Should this person change their mind, should another attorney come in, should this matter be revisited, all of that which has been developed still exists in the permanent record. There is no prejudice to anyone. Okay. I think we've heard enough on that. Let me follow up with a point, counsel. You didn't recall the name of the authority of the case, but you seem to indicate that there is authority to allow you to dismiss or withdraw during the pendency of a proceeding. It was a request to review that had been filed, yes, and the court ruled that there was not any requirement that the Petitioner get the permission of anyone to withdraw that they had a pendency. What case are you talking about specifically? You're talking about a case. And as you look at the case, the point I was attempting to get to is that your case doesn't seem to speak to the timing of the withdrawal or dismissal. That case did not qualify one's right on that proposition. In other words, if there was no dicta, you know, this would be a different ruling if we were closer or if briefs had been filed or if the panel had read the brief, you know, anything like that. Are you familiar with any authority? I'm sorry? Any authority cited here that talks to the timing as to when dismissal can occur during the commencement of a proceeding? Being that the Industrial or the Workers' Compensation Commission itself can only act within the powers afforded to it by statute, it is my position that the statute that speaks to this topic says that I, the party, is the only one empowered to make the decision to bring a 19B petition, so much so that I have to bring it in so many different ways and forms and with certain information and sign it. There is nothing in there that then in turn says that however one's brought, it cannot be withdrawn. There is nothing in there that gives any arbitrator of the commission discretion to have to decide the fairness of if somebody wants to withdraw. I think the two cases you're talking about are Thomas and Millennium Knickerbocker Hotel, which are clearly distinguishable from this case. Nothing to do with an absolute right to withdraw after the 19B petition had begun and testimony had been elicited. But anyway, that's just my opinion. I don't think they're on point. You have me at a disadvantage. I just can't recall the case that speaks to the question of, hey, when you, by way of analogy I was using it, you have a, you've made a request to have the matter reviewed, can I withdraw that? They ruled yes, you can. And they made it, they analogized it to the civil system where everybody has the absolute right to withdraw, to dismiss their entire case. Again, this is not about the civil case. No, hold on. There's no absolute right to withdraw in a civil case. The Court can deny it if it interferes with the disposition of the case. And the rule specifically says so. So when we say there's unqualified right, that just simply isn't true. But I didn't read the statute in the way you did, and you would certainly know better than I, but my reading of the statute of non-suit was that the statute of non-suit is different than an attorney withdrawing. Oh, I'm sorry. No, I was only talking about withdrawing the cause of action. I thought we were talking about you withdrawing. No. No, I was talking about the withdrawal of all requests for relief, whether or not I had an absolute right to do that. And I, you know, I can only find analogous authority on that. But don't spend all your time. You've got about seven other issues to talk about. Clearly I do. So moving on to that, the Court demands that I nonetheless proceed with the case, which I did. So what did the arbitrator do that the Commission, I believe, wrongfully affirmed? The arbitrator said, I'm not going to rule on any of the prior medical bills that were awarded. I'm not going to reorder those. I'm not going to rule on your request that there be attorney fees or penalties awarded based on the fact they haven't complied with that prior award. I'm not going to make any findings regarding whether or not the petitioner's current condition is causally connected to that which was previously adjudicated and essentially sent us away without any relief. It is my position that these requests must be adjudicated. On review, the Commission did no different. The Commission made fodder of the fact that there was innuendo of other employment and innuendo of another accident. It was more than innuendo. There was testimony by Countrywide that your claimant was working for them. Actually not. The only testimony by Countrywide was by someone who could not speak to the personal identity of my client, but could only say that someone named Nelson Centino, she met twice in a matter of several years, and once he came in and he said, I'd like you to change my paychecks to Roberto Morales, and a second time he came in and showed her an identification from Roberto Morales. She then asked the computer to print out any checks she had ever written to no particular Roberto Morales. So you're saying this was an actual claimant that was using two different identities. I'm not taking a factual position on that. Okay. Was there an officer who testified that this was the same person? Didn't somebody from West Chicago testify that this was Roberto Morales? There was an officer that testified that my client was under investigation for using these names improperly. Yes. Then your position is here representing to us you never worked for Countrywide. Centino never worked for Countrywide. I'm not taking a factual position on that. If you're asking me personally off the record, yes, I believe he probably worked for Countrywide, and I believe he probably worked for Countrywide for the brief period of time that they printed out those pieces of paper. But did anybody testify to that from Countrywide? No. They printed out a couple of run sheets, not the least of which made no sense, because some of the run sheets were for a Nelson Centino that was way in advance of what they were saying was the work accident. But certainly if the commission found that it was the same person and he was perpetrating a fraud, you'd have to concede it bears on his credibility, doesn't it? Yes, I do concede that. Let's go to what might be your strongest argument. What about the commission's denial of penalties and attorney's fees for the company's failure to pay the additional $1,000 in TTV benefits and also the uncontested portion of the medical bills? How is that an error? It's an error in that based on the statutes that are at stake, the facts clearly met the requirement that they award fees and penalties. Well, it goes beyond that. Wasn't there a letter from the respondent's own attorney to the company pointing out that it was owed? Do you recall that? Yes. In July of 2015. And what did that letter state? The letter in essence stated that we're not going to pay, I think, we're not going to pay any of the award because it's still up on review, so we'll pay the award when we see that everything else that's not contested is, we'll pay the uncontested portion when we think the contested portion has been settled. And we're not going to honor the award for prospective medical care because we want to relitigate that with a new IME. What about the original letter of July 7th, 2015, that you offered into evidence from the respondent's attorney in which the respondent's attorney acknowledged an underpayment of TTD benefits in the amount of $1,101.57 and stated, the attorney stated he would direct my client to pay as we did not take a review of this loan decision. Doesn't that support your argument? Yes, as to the $1,000. But, of course, it's my position that under Jacobo, the other matters that were not up on appeal were also due and payable and have never been paid. So there's some tacit acknowledgment that this was owed and not paid. More than just that. When we were actually at the trial, the judge said, I don't want to hear any testimony from anybody about why this stuff hasn't been paid or whether it's been paid. I accept that as fact. And there's no excuse for it not being paid. So I was denied the opportunity to call respondent's attorney to prove that they had no reasonable basis. It was just a given. I'm only pointing that out because that would not be determinative based on the commission's assessment of your client's testimony. It's an overarching issue that has nothing to do with his credibility. Nor would the commission be in a position to, by reason of my client's credibility, have any ability to say that he doesn't, that the care he received following the initial award for the same body parts, for the same prospective medical care that was awarded, should not be awarded to him as being unrelated. In other words, if my client had committed murder two years after this, if my client had robbed a bank two years after this, if my client had been guilty of tax fraud two years after this, if my client had basically been proven to be an untrustworthy person, none of that is appropriate evidence contrary to the unrebutted medical testimony of his physician that the care that he, that the minor bills for follow-up medical care consistent with the prospective award to pursue fusion surgery should be awarded. By the same token, they had the full ability with an IME to come in and say that there was an interruption in the causal connection because of the new work injury, which they only proved by getting an application out of the file of the secretary. They didn't call in the supervisor or the owner who well knew my client who could say with any degree of certainty that these paychecks that were paid to Nelson Centino were paid to this Nelson Centino as opposed to any other. Why is it their burden to prove that? Evidently, that was the premise upon which the, the factual premise upon which the commission denied my client any TTD for the entire period of time was because they, the, the innuendo cast by these offers, which innuendo alone needs to be proved up, so their burden would come by virtue of the fact that they wanted by innuendo to say, because I've got paychecks to someone of this name, they must necessarily be you. And they needed to prove that up if they wanted to say that I've let you run over on your time. You have time to respond. Very good. Thank you, Justice. Counsel, you may respond. Good morning. May it please the court. Eric Myers from Scopoletus on behalf of the respondent. Justices, I believe this case really boils down to two main issues. We've got a waiver issue and we have a fraud issue. Really, fraud is at the central of this case. And I think we've... He's got this argument that there was really nothing to connect them. Obviously, the fact that there's a lot of documentary evidence, there was some way for police officers to establish that the claimant was proceeding under two claims on a different identity. Correct. And then, obviously, he had worked for Countrywide, even though he denied definitively ever working after the accident. So, how do you rebut his argument? Well, I believe... He said it's just innuendo and speculation. Exactly. So, I completely disagree that it's innuendo. I think it's clearly explicit within the record. If you read the totality of the record, you'll see that it's not just a suggestion, it's actual fact. The petitioner here was working during the time that he was seeking TTD. That's fact and established from the record. Once this was shed to light, the arbitrator mentioned it in her opinion. The commission then, after reviewing this opinion along with the Morales opinion, determined that this was one complete record because it involved the same petitioner seeking benefits for the same injury, essentially. Further, and part of the reason why I think the benefits were denied, is the fact that the petitioner did, in fact, receive the treatment that he was seeking in the Santino case from my client. Ultimately, he received treatment to the L5S1 lumbar. The exact same thing that Dr. McNally was recommending and what they were seeking benefits for. So, given the totality of those circumstances, I think, yes, absolutely, this is not innuendo. This is fact established in the record. The commission was justified in relying on the factual evidence before it to make that determination that the claimant was not only dishonest and deceitful in this case, but essentially perpetuating fraud because he was trying to recover the same benefits for the same injury under two different names at the same exact time. Had we known that this was the same person, we would have been in a position, and I believe counsel mentions this in his brief, to file a motion to consolidate these actions. But we weren't in that position because this was allegedly a different person. We had to establish through our own hearing the evidence before the court today, and that includes the evidence of this perpetual fraudulent behavior. Now, I want to address quickly the waiver issue as well. Counsel suggests that he has not waived his right to bring his motion to withdraw argument before the court today. I believe that, for one, the waiver argument has been, I'm sorry, the motion to withdraw argument has been waived because he did not preserve that either on his petition for review or on his statement of exceptions. Now, those are attached to Respondent's Brief as Exhibit A14 and A16. You'll see that the only indication on the petition for review was a jurisdictional argument. It was not raised in the statement of exceptions, and it has nothing to do with the ability for him to withdraw his petition mid-hearing. We believe that the court was correct, and not only the court, but the commission was correct in denying his ability to withdraw mid-hearing because it would have been extremely prejudicial to the Respondent who had all of their witnesses there present before the beginning of this hearing, only to establish this innuendo, if you will, this record of potential fraudulent behavior and establish the facts that the claimant was working for Countrywide at the same time. Has this issue ever been definitively ruled on by any appellate or the Supreme Court about whether or not, in the context of an arbitration proceeding, the claimant has the absolute right to withdraw his petition at any time, even after testimony and evidence has been presented? Do you have any cases right on point? So I do not believe that there's a case specifically on point in the arbitration context. So what we're analyzing this to is essentially what plaintiff petitioner is trying to analyze this along the Brewerton opinion, right? So Brewerton basically says that if it's silent in the rules of the confirmation, that you're going to look to the Illinois Rules of Civil Procedure to give you guidance on what to do in that situation. So I agree with that, but I agree with that in the extent that 19b and starting a 19b hearing is essentially the same as starting a trial. And once you've begun that trial, according to the Illinois Rules of Civil Procedure, and that's Rule, I believe it is 1009, according to that rule, you cannot withdraw once the hearing has commenced unless you have legal support to do so. Otherwise, you can get a do-over at any time. You don't like the way it's going, theoretically. Okay. Wait a minute. My witnesses aren't testifying the way I think. My evidence isn't coming in. I'll just strike this hearing after three days and start over next week. Correct. It would be an absolutely absurd result, Your Honor, and it would allow multiple bites at the apple. Although I could not find any case law on point directly on that issue for the workers' compensation. The compensation may enter into it as well. Correct. Was leave of court requested? Leave of court – leave of the arbitrator was requested. Yeah. And that request was denied. Pardon? And it was denied. And it was denied. Over – I'm sorry. It was – it was – it was – it was granted over Respondent's objection, but only for the specifically limited purpose of counsel determining whether or not he was fit to continue to represent his client. He posed an ethical dilemma to the – to the arbitrator, and for that basis only was it granted. The matter was suspended – it was suspended and continued so that he could have time to decide what he was going to do vis-à-vis his continued representation.  He didn't ask to strike the entire hearing. Correct. And it was made clear at that point that the hearing would continue with or without him, but he would need to make a determination whether or not he was going to continue to represent his client. And that is consistent with Rule 7030.203G, which discourages bifurcated hearings. And what is the standard of review for that decision by the arbitrator? I believe the – Would you – The decision regarding the bifurcation? No, the withdrawal. Oh, the withdrawal. Yeah. I mean, you were analogizing to Rules of Civil Procedure without – you must have leave of court to withdraw. I'm sorry, can you rephrase the question? Weren't you talking about – didn't you go into the Rules of Civil Procedure? What was that issue? Correct. So I was asked the question of whether or not there was any case law in point allowing – Correct. So your reasoning saying, no, we must go to the Rules of Civil Procedure. Correct. And that was based on the Brewerton opinion, which was related to another workers' compensation opinion in which they looked to the Rules of Civil Procedure for guidance when it wasn't clear based on the rules. And it says leave of court must be sought. Correct. And you're saying leave of court was sought only in regard to continued representation to an ethical issue? That's correct, yes. Can I ask you a question? Assume we agree with you on everything. Could you tell me what the reason was for failing to pay $1,101.50 in uncontested TTD benefits and the $66,781.33 that was in contested medical expenses? What was the reason for not paying it? I can tell you that one of the reasons is that it created a dilemma once we discovered that Centino might not actually be Centino. So as the Court may know, the Act requires payments directly to the Petitioner, and in this case we were conflicted as to who exactly the Petitioner was, whether that was Mr. Centino or Mr. Morales. Well, you knew it was the same person, didn't you? He's using two different identities, but the guy that was in the first case and you acknowledged owing it never went up on appeal. How do you continue to deny it? Well, so we didn't know until the hearing had actually taken place and we established on the record. I mean, essentially, we suspected that it was the same individual, but not until that hearing was underway. Assume you were able to establish that he was engaging in a fraud. What would your right to relief be against the first 19B decision? What could you have done about it? Well, I believe that the Commission referred to the Petitioner's ability to bring a 19G petition for that determination. 19G is only the enforcement of an award. So if you can't attack the award, you get no relief at 19G. So the question becomes, assume that in this particular case you got a 19B, an award has been made, $1,100 in TDD is not contested before the Commission, and the Commission has affirmed all the $30,000 of the medical, and what can you do about that? Assume you find out he was engaging in a fraud. Correct, and assuming that you don't want to pay the providers directly, I suppose we could have gone in on a motion and asked for the Commission to adjudicate that dilemma to decide who gets to pay. Do they have a right to do that? That I'm not sure of, Your Honor. But you didn't do it, did you? We did not. So you just can't say, well, we think there's some fraud, therefore we're not going to pay this that's already been owed and we already acknowledge it's owed? Correct? Don't you see a problem with that? I do see a problem. I see many problems, Your Honor. That being one of them, yes. Okay. Thank you. Okay. Going back to the issue of fraud, Petitioner mentions several cases that the courts have decided that where a petitioner has committed a fraud, the fraud won't essentially reopen the proofs. Now, that's not at issue in this case, and I believe that Petitioner cited to both Ming and Smalley. And in both of those instances, the proofs had already closed. What happened here is we brought evidence of fraud during the actual 19th hearing. So during trial, the case was still right for adjudication. We were presenting evidence. And that's a distinguishing feature. And that's where I believe that this court I don't think there's no question that you had a right to bring in evidence of fraud as it related to the relief being sought in the second 19B. I'm still stuck on the question, what do you do about the first 19B if you suspect or discover fraud in the obtaining of the award, especially due to the fact that we affirmed it? Correct. Oh, but the fraud was subsequent, wasn't it? I mean, up to that point, he hadn't misrepresented his work status as a countrywide thing. That happened subsequent to the first arbitration hearing, wasn't it? The record establishes that he had been working for Countrywide approximately around the time that he was bringing the second 19B petition, essentially. Right, the second. Correct. Okay. But he had already had the first hearing and the award was already rendered before he went to work for Countrywide, correct? That's right, yes. So what would you do about the first hearing anyway? I mean, assuming somebody's engaging in fraud later on, it doesn't give you the right to undo something where there wasn't any allegation of fraud earlier, does it? I don't believe that it does. I think, though, when you look at the totality of the two cases, you've got the petitioner receiving benefits from both Countrywide and my client, Minutemen, and I think that that is relevant to the analysis of the claims here, essentially, because if this Court were to reverse the Circuit Court and the Commission's opinion here, essentially you would be setting a very dangerous precedent to allow double recovery for petitioners who perpetuate fraud. Yes, but you don't want to believe it. You're standing before us having won on every single issue all the way up here except for the fees and the penalties, correct? Correct. Okay. So what's your justification for not having paid the uncontested TTT and the uncontested medical insurance? Other than what I've already offered to the Court, which was we didn't know once the suspicion arose of who the claimant actually was, whether or not we should pay the providers, pay Morales, or pay Santino in order to establish that organ. You could probably work that out. I think so. Okay, and unless there's any other questions, I'll leave it with Commissioner Brennan's statement that ever since Walker v. Illinois Medicar has the Commission seen a more prolific liar, and I believe that really hits to the heart of all the issues in this case. Thank you for your time. Thank you, Counselor. Counsel, you may reply. To hone in, a couple of issues are created when we talk about 19G. Number one, there's no way to enforce prospective medical care. As far as the excuse for not honoring the first award despite their concessions that nothing was up on appeal and nothing has been even to this present time, that they were contesting that they left unpaid, they're now saying that it's because we don't know who to write the check to. And that might work as of December 2015 post a September 2012 award when they say it's the first time they realized they could raise that argument, but it doesn't fly for all of the years preceding. As well, there is a rule-of-the-case argument here, or a rule-of-the-case issue, and clearly the entire, every adjudication of causal connection, accident, nature and extent, prospective medical care, in addition to the bills and the TGD that was, by the way, found adjudicated to be due up until September 12, 2012, September 7, 2012, it's irreconcilable with logic to think that this person couldn't be in the same physical condition on September 8th, 9th and 10th of 2012 either. Putting all of that aside, the commission and the arbitrator seems to have just simply set about trying to find any possible way to give this man absolutely nothing, including just plain not ruling on attorney fees, just plain not ruling on whether causal connection continued, and just plain blanketly assuming that he must have been employed before the paychecks at Countrywide, and therefore is do-nothing, and he must have been employed after the paychecks at Countrywide, so he should be in the do-nothing, or without any medical evidence that since he had or filed a claim for an accident on August 7th, that that must have interrupted some causal connection, or shame on him, he didn't tell us about it or didn't tell his lawyer about it or is using a different name when it happened, therefore everything just plain can't be. And I would just ask Your Honors to dissect this a bit because using inflammatory words like fraud on the commission and never have I ever seen does not encapsulate the way we're supposed to see cases like this, cross-examination. If a plaintiff in an arbitration proceeding testifies to facts which are unrebutted and the commission turns around and says we don't believe you, we think you're a liar, do they have a right to do that? I don't think so with this case. I don't think so with the other case. I didn't ask you about this case yet. I asked you do they have a right to do that. I don't know. There may be such a case, but in my case I've got simply you worked for another employer and you denied on direct that you didn't. You had another accident and you denied on direct that you did. So now we know that this guy is less than credible. However, we're at the table with things that he's not supposed to even testify about without medical testimony and all the medical testimony about his capacity nonetheless is credible, nonetheless is unrebutted and is it really unusual for a human being to work despite their doctor's advice when they can and it isn't. And in this case if they wanted to make it bigger than that they shouldn't have taken it out of an issue. They said to the arbitrator I am not here going to argue and it's another thing the stipulations of the parties are exactly what we're arguing here should be used to support this opinion. We stipulated that whether my client was physically able to work would not be an issue. It's only whether his current inability which would be a foregone conclusion therefore was by virtue of the accident that was already adjudicated. We took out of play whether my client was at maximum medical improvement requiring no further medical care by stipulation verbally when the arbitrator asked counsel and so he offered no IME he offered nothing. Then we get to the review level and the commission says let's take all those things that Lule and his client were denied the opportunity to put into evidence to support to test all of those things and say for the lack of them you shouldn't be awarded TTD you shouldn't be awarded prospective medical care and let's even do worse than that. Let's look at evidence that Lule and his client were not even part of didn't even know of were not even present for and after the entire review has been fully briefed let's bring that in and deliver our opinion completely relying upon medical records and IME's and other cases because this guy's got the same name which evidently everybody knew about. At the time of my trial evidently they could have consolidated. Counsel your time is up. Thank you for your question. Thank you counsel both for your arguments in this matter we've taken our advisement and written dispositions